**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DORIS V. WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21-cv-03589 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| BANK OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Doris Walker has sued Defendants Bank of America, N.A. ("BANA") and

Lienhub ("Lienhub") claiming that they violated her constitutional rights and committed various

common law torts, including fraud, by manipulating and misrepresenting her transactions for the

purchase of tax liens for her online investment portfolio. Now before the Court is BANA's motion

to dismiss the claims against it in Walker's Second Amended Complaint ("SAC," Dkt. No. 23)

pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 31.) For the reasons stated below,

BANA's motion is granted.

## BACKGROUND

In April 2021, Walker filed her initial complaint against BANA in the Circuit Court of

Cook County, Illinois. (Notice of Removal, Ex. 1, Dkt. No. 1-1.) On July 6, 2021, BANA

removed the case from state to federal court (Notice of Removal, Dkt. No. 1). Walker then filed

the SAC on September 28, 2021, adding Lienhub as a second Defendant. The SAC remains the

operative complaint.[1] For purposes of BANA's motion to dismiss, the Court accepts all well-

---

[1] The Court has informed the parties that it would treat Walker's motions for joinder of defendants (Dkt. No. 37, 51), by which she seeks to add several Florida counties as additional defendants in this case, as a motion for leave to file an amended complaint and consider it along with BANA's motion to dismiss. Nonetheless, on December 28, 2021, while BANA's motion to dismiss was pending, Walker filed the

pleaded factual allegations in the SAC as true and draws all reasonable inferences from those facts

in favor of Walker as the non-moving party. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507

F.3d 614, 618 (7th Cir. 2007).

Generally, Walker claims that BANA and Lienhub manipulated her bank and investment

accounts by erasing and "switching" her purchases of tax liens in an effort to take control of her

portfolio. (SAC at 3.) More specifically, Walker alleges that she is a banking customer of BANA,

where she has six accounts. (*Id.*) She also has an "investment portfolio held in trust" by Lienhub, a

web portal that facilitates the purchase of tax certificates offered for sale by Florida tax

collectors.[2] (*Id.* at 2.) According to Walker, between January 1, 2021 and June 7, 2021, she

purchased 500 tax lien certificates through Lienhub, only to find that BANA and Lienhub did not

accurately represent those transactions in her bank and investment accounts. (*Id.*) Instead, "both

defendants manipulated [her] bank account . . . and erased, and switched vital purchases and

transactions in an effort to take control of . . . [her] online investment Portfolio." (*Id.* at 3.) Walker

claims that $35,000 she spent on her purchases is missing and that her Lienhub account does not

show the tax lien certificates she purchased. She also alleges that BANA has failed to provide an

accurate accounting of her bank records and has sent her "doctored" financial statements. (*Id.* at

---

Third Amended Complaint ("TAC") without leave of court. (Dkt. No. 45.) Pursuant to Federal Rule of Civil Procedure 15(a), a party may amend a pleading ***once*** as a matter of course within 21 days after serving it or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Walker amended her complaint once as a matter of course when she filed her SAC. Because she did not obtain BANA's written consent or the Court's permission to amend her complaint again, the SAC (not the TAC) remains the operative complaint.

[2] *See Introduction*, LienHub, https://support.grantstreet.com/wiki/display/LHD/Introduction (last visited March 25, 2022) ("Lienhub.com is a web portal built to handle sales and management of tax certificates. If a county is listed on LienHub, [the portal] is the tax collector's official method to sell tax certificates and allow certificate holders to personal additional actions including reviewing the status of certificate, filing tax deed applications and accessing tax reporting documents.").

3–4.) In these ways, Walker asserts, BANA and Lienhub have conspired against her by way of "illegal actions and bad faith." (*Id.* at 3.)

The SAC contains a total of seven counts directed to BANA (identified in the SAC as "Defendant 1"): a federal claim for deprivation of Walker's rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution (Count 1), and common law claims for fraudulent misrepresentation (Count 2), breach of contract (Count 3), tortious interference (Count 4), intentional infliction of emotional distress ("IIED") (Count 5); "economic harm" (Count 6) and fraud (Count 7).[3] BANA has moved to dismiss all claims asserted against it.

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The purpose of a Rule 12(b)(6) motion is not to decide the merits of the case; instead, such a motion asks the Court to decide whether a complaint is sufficient to state a plausible legal claim. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

---

[3] The counts against Lienhub, identified as "Defendant 2," are listed separately and include: tortious interference (Count 1), fraudulent misrepresentation (Count 2), breach of contract (Count 3), violation of Walker's constitutional rights under the Fourteenth, Eighth, and Fifth Amendments (Count 4), and breach of privacy (Count 5).

Walker is not represented by counsel in this case and thus has made her filings *pro se*. "A document filed *pro se* must be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted). But *pro se* litigants still must comply with the requirement in Federal Rule of Civil Procedure 8(a)(2) that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And in addition to the notice-pleading requirements in Rule 8, any fraud-based claims must also satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires the complaint to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). More specifically, Rule 9(b) requires plaintiffs claiming fraud to allege the time, place, and content of any alleged misrepresentations, the means by which the misrepresentations were communicated, and the identities of whoever communicated the misrepresentations. *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Put simply, Rule 9(b) requires pleading "the who, what, when, where, and how" of the fraud. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016).

## I.     Count 1—Deprivation of Rights under the Fifth, Eighth, and Fourteenth Amendments

In Count 1 against BANA, the SAC asserts a claim for deprivation of Walker's rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. As alleged, BANA violated those constitutional rights by "attempt[ing] to purge, delete, and conceal" records of her purchases of tax lien certificates utilizing Lienhub. (SAC at 5.)

As Walker acknowledges in her response to BANA's motion to dismiss, 42 U.S.C. § 1983 authorizes private plaintiffs to assert claims for relief against defendants who, acting under color of state law, have violated individual rights guaranteed under the United States Constitution. (*See* Pl.'s Response to Mem. in Support of Mot. to Dismiss ("Response") at 6, Dkt. No. 35); *see also City of Rancho Palos Verdes, Cal. v. Abrams,* 544 U.S. 113, 119 (2005) (citing *Maine v. Thiboutot,* 448 U.S. 1, 4 (1980)). But "a claim under § 1983 is tenable only if the defendants acted under color of state law—in other words, if they are state actors." *Gayman v. Principal Fin. Servs., Inc*., 311 F.3d 851, 852 (7th Cir. 2002); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("Ás a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments." (internal quotation marks omitted)).

Here, Walker makes no allegations in the SAC suggesting that BANA, a private corporation, may be held accountable as a state actor. Although Walker insists that BANA's federal charter transforms it into a "quasi-governmental agency" (Pl.'s Response at 7), the mere fact that an otherwise private actor operates under a federal or state government charter does not transform it into a state actor. *See, e.g.*, *Ordower v. Off. of Thrift Supervision*, 999 F.2d 1183, 1187 (7th Cir. 1993) ("That [defendant] holds a federal charter no more subjects its acts to the due process clause than the fact that most corporations hold charters from states makes their deeds 'state action.'"); *see also Bishop v. Fed. Intermediate Credit Bank of Wichita*, 908 F.2d 658, 663 (10th Cir. 1990) (explaining that "[d]espite pervasive government regulation of the farm credit system and the designation of federal intermediate credit banks as 'federally chartered instrumentalities of the United States,' a federal intermediate credit bank is not a government actor for purposes of establishing constitutional deprivations") (alterations and citation omitted));

*Caldwell v. Citimortgage, Inc.*, No. 15-CV-1784, 2015 WL 6445467, at *4 (N.D. Ill. Oct. 23, 2015) ("[T]he Court recognizes that [defendant] Freddie Mac was chartered by the federal government. However, this is insufficient, in and of itself, to transform Freddie Mac into a government actor."). Similarly, Walker points to BANA being insured by the Federal Deposit Insurance Corporation and regulated by the Office of the Comptroller of the Currency as reasons to treat BANA as a state actor, but a bank "is not a state actor by virtue of its regulation by the government and participation in the federal reserve system and Federal Deposit Insurance Corporation." *Bailey v. Harleysville Nat'l Bank & Tr.*, 188 F. App'x 66, 68 (3d Cir. 2006).

Private defendants can act under color of state law for purposes of § 1983 when they are "willful participant[s] in joint action with the State or its agents.'" *Xiong v. Fischer*, 787 F.3d 389, 398 (7th Cir. 2015) (internal quotation marks omitted). But Walker makes no allegations plausibly suggesting that to be the case here. The Seventh Circuit has explained that private action can become state action in the following circumstances:

> when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights; where the state compels the discriminatory action; when the state controls a nominally private entity; when it is entwined with its management or control; when the state delegates a public function to a private entity; or when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself.

*Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009) (internal citations omitted). At a minimum, a private actor and state actor must coordinate for one of those circumstances to apply. *See id.* Here, Walker alleges that BANA and Lienhub conspired together (*see* SAC at 4, 8), but she sets forth no facts suggesting that Lienhub is a state actor. Since Lienhub is the only other actor with whom Walker alleges that BANA worked or conspired, that provides no basis to treat BANA as a state actor.

In sum, because Walker has not alleged that BANA was a state actor or was working or conspiring with a state actor when it allegedly acted in violation of her rights under the Fifth, Eight, and Fourteenth Amendments, Count 1 must be dismissed.

## II. Counts 2 and 7—Fraudulent Misrepresentation and Fraud

In her SAC, Walker asserts two counts that sound in fraud and thus are subject to the heightened pleading standard in Rule 9(b). Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). In Count 2, under the heading of fraudulent misrepresentation, Walker alleges that BANA "[h]as concealed [Walker's] [L]ienhub purchases and created falsified documents for presentation to this [C]ourt." (SAC at 5.) In Count 7, under the heading of fraud, Walker makes allegations regarding a specific transaction in which she engaged with Lienhub on April 10, 2021 that was "never accounted for" and was "charged back," a phrase Walker describes as meaning that a parcel of land was sold from under the investor or resold. (*Id.* at 7–8.) Count 7 may also allege a different transaction that took place between January 1, 2021 and June 7, 2021, in which Walker's purchase of a tax lien from Charlotte County was deleted from her Lienhub portfolio and listed for sale again (*id.* at 8); although it is unclear whether that transaction represents a separate transaction from the one on April 20, 2021. Those allegations, of course, are in addition to the general allegations in the SAC prior to the recitation of the specific counts.

To state a claim for fraud in Illinois, a plaintiff must allege: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). Fraud may be accomplished through omissions of material fact as well

false statements. *See Razdan v. Gen. Motors Corp.*, 979 F. Supp. 755, 759 (N.D. Ill. 1997), *aff'd*, 234 F.3d 1273 (7th Cir. 2000).[4]

## A.    Count 2

Regarding Count 2, Walker's claim fails at the first pleading requirement: alleging false statements or omissions of material fact. Walker has not plead with specificity sufficient facts from which the Court can plausibly infer that BANA made material misrepresentations to Walker or concealed material facts from her. While Walker alleges that BANA "has concealed [her] [L]ienhub purchases and created falsified documents for presentation to this court" (SAC at 5), she does not identify with sufficient specificity which purchases BANA allegedly concealed or which documents BANA allegedly falsified. Walker has attached documents to her response to BANA's motion to dismiss that appear to show pending purchases from county tax collectors. (Pl.'s Resp. at 30–42, Dkt. No. 35.)[5] But those documents do not shed any light on the nature of her claim because it is not clear what information included in those documents Walker believes to be false or concealed.

Moreover, Walker makes no allegations tending to show that BANA knew or believed that any of its statements were false, that BANA intended to make Walker act upon those allegedly

---

[4] The pleading requirements for a fraud claim are substantively equivalent to those of fraudulent misrepresentation. *See Razdan v. Gen. Motors Corp.*, 979 F. Supp. 755, 759 (N.D. Ill. 1997), *aff'd*, 234 F.3d 1273 (7th Cir. 2000) (articulating standard for pleading fraud as alleging "a false statement or omission of material fact, which is made by defendant with the intent to deceive and induce the plaintiff to act, plus justifiable reliance by plaintiff on the false statement or omission, and an actual injury to plaintiff as a result of the misstatement or omission").

[5] The Seventh Circuit has taken a broad view of the documents that may be considered in connection with a motion to dismiss, noting that "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court here considers the attachments in Walker's response as they are central to the complaint and "elaborate on [her] factual allegations" that are "consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

false statements, or that Walker relied in any way upon those statements. Indeed, Walker does not describe any actions she took in reliance upon the allegedly falsified documents from BANA. Without more information regarding the "who, what, when, where, and how" of the allegedly fraudulent conduct, *Acacia Mental Health Clinic, LLC*, 836 F.3d at 776, Count 2 fails as a matter of law.

Although Walker does not explicitly mention fraudulent concealment as an alternative legal theory for her claim in Count 2, construed liberally, the SAC could be viewed as attempting to allege a claim under that fraud theory. To state a claim for fraudulent concealment, a plaintiff must allege that the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff. *Wigod*, 673 F.3d at 571. Such a duty arises when (1) the parties have a fiduciary or confidential relationship, or (2) plaintiff places trust and confidence in defendant so much so that defendant takes on a position of influence and superiority over plaintiff. *Id.* In addition to her failure to plead with specificity what material facts were intentionally omitted or concealed by BANA, for purposes of any fraudulent concealment claim, the SAC also does not plausibly allege that BANA had a duty to disclose anything to Walker that was not disclosed. Walker's response to the motion to dismiss states that BANA has a fiduciary relationship with her because of Walker's checking and business checking accounts with BANA. But, under Illinois law, "a bank generally owes no fiduciary duty to its depositors." *Miller v. Am. Nat. Bank & Tr. Co. of Chicago*, 4 F.3d 518, 520 (7th Cir. 1993). The SAC does not set forth allegations that would allow the Court to reasonably infer otherwise.

Walker's lack of specificity and failure to state a claim for false misrepresentation or false concealment result in Count 2's dismissal.

### B.    Count 7

For the fraud claim in Count 7, the SAC alleges specific tax lien certificate purchases Walker made. (SAC at 7–8.) In particular, Walker alleges that she purchased a tax lien certificate on April 10, 2021 but experienced what appeared to be an "error in the system." (*Id.* at 7.) Noticing this error, Walker took a photo of the issue. (*Id.*) The purchase subsequently did not appear in her investment portfolio and the purchase was "charged back"—in other words, it was resold after Walker made her purchase. (*Id.* at 7–8.)

Further, though unclear to the Court, it appears that Walker alleges a second transaction between January 1, 2021 and June 7, 2021 that disappeared from her investment portfolio. (*Id.* at 8.) Instead of displaying in Walker's portfolio, her purchase of a Charlotte County tax lien certificate was added to the items for sale on Lienhub. (*Id.*) The Court remains, nonetheless, uncertain as to whether this transaction is the same as the April 10, 2021 transaction. After all, in describing the Charlotte County transaction, Walker alleges this purchase took place between January 1 and June 7, 2021, and states, "A tax deed was applied for on April 10th for 28 acres." (*Id.*) Because it is unclear whether Count 7 alleges a single transaction or two transactions, the Court considers both options.

Viewing Count 7 as alleging a single transaction, the allegations regarding Walker's April 10, 2021 purchase do not meet the heightened pleading standard of Rule 9(b). Though Walker states this claim for fraud with some particularity—such as which transactions were affected and when the events took place—Walker does not allege a false statement or omission as required under the pleading standard for fraud. Instead, Walker notes an "error" that occurred. (SAC at 7.) The Court does not find room for a reasonable inference that such an error amounted to a false statement or omission on BANA's behalf. Walker's allegations also equivocate between whether

the purchase failed to go through, or whether the purchase completed but was erased in order to be "charged back." (*Id.* at 7–8.) Lastly, as with Count 2, Walker fails to allege an action she took in reliance on BANA's false statement or omission. For these reasons, allegations regarding an April 10, 2021 transaction do not satisfy the Rule 9(b) pleading standard for fraud.

Viewed as two separate transactions, Count 7 still suffers from the same pleading deficiencies. That Walker's purchase of a Charlotte County tax lien license did not appear in her investment portfolio does not amount to a false statement or omission. And, although Walker alleges throughout the SAC that BANA acted intentionally, these allegations amount to conclusory statements and are not enough to plausibly suggest that BANA acted intentionally to deceive Walker or have her rely on false statements or omissions. What is more, Walker does not identify any way in which she relied upon a purported false statement or omission from BANA. If anything, it appears that Walker noticed that the Charlotte County purchase was missing and understood its falsehood almost immediately. Given the above, Count 7 fares no better when the allegations are viewed as describing two separate transactions.

Because Count 7 does not meet the heightened pleading requirements for a fraud claim, the Court dismisses Count 7 for failure to state a claim.

### III.    Count 3—Breach of Contract/Breach of Fiduciary Duty

In Count 3 against BANA, Walker asserts a claim for breach of contract for which she claims that BANA "has breached the fiduciary agreement." (SAC at 6.) In further support of this claim, Walker alleges that BANA "concealed" her records and "deleted . . . and manipulated" her account. (*Id.*) She also maintains that BANA "has not protected the privacy, or accuracy, of [her] account," disclosing her private transactions. (*Id.*)

To state a claim for breach of contract under Illinois law, a plaintiff must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Here, however, Walker does not allege the specific contract that she claims BANA breached nor does she allege the terms of the contract. Walker refers to a "fiduciary agreement," which she describes as the personal and business checking account and point of sale (or POS) transaction terminal BANA offers. (SAC at 6.) But, without having a specific contract to analyze or knowledge of its terms, the Court cannot determine whether BANA breached the contract or whether Walker substantially performed her obligations under the agreement.

Another way Walker might establish a breach of contract is by alleging a breach of the implied duty of good faith and fair dealing. *See, e.g.*, *Clutch Auto Ltd. v. Navistar, Inc.*, No. 12 C 9564, 2013 WL 1914328, at *6 (N.D. Ill. May 8, 2013) (finding that, although a party cannot raise an independent cause of action based on breach of implied duty of good faith and fair dealing, such a breach can be alleged in support of a breach of contract claim). "[E]very contract implies good faith and fair dealing between the parties to the contract." *LaSalle Bus. Credit, Inc. v. Lapides*, No. 00 C 8145, 2003 WL 722237, at *15 (N.D. Ill. Mar. 3, 2003). To establish a breach of the implied duty of good faith and fair dealing, "the complaining party must show that the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with reasonable expectations of the parties." *LaSalle Bank Nat'l Assoc v. Paramont Properties*, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008) (citing *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443–45 (7th Cir. 1992)). At bottom, though, pleading a breach of contract claim

under this theory still requires pointing to a specific contract. As stated above, the Court has no contract to analyze here. As a result, the Court cannot determine the terms of the contract, whether the contract vested BANA with discretion in performing an obligation, or whether Walker substantially performed her obligations under the arrangement. Without these basic elements, the Court cannot draw a reasonable inference that BANA breached its duty of good faith and fair dealing.

In seeking dismissal, BANA suggests that Count 3 may be interpreted as attempting to allege a claim for breach of fiduciary duty, due to Walker's language about BANA allegedly "breach[ing] the fiduciary agreement." (SAC at 6.) To the extent Walker intends to assert a claim for breach of fiduciary duty, she must allege "that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which [she] complains." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 (7th Cir. 2015) (citing *Needle v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000)).

Any claim by Walker for breach of fiduciary fails at the first step of the inquiry: alleging a fiduciary duty. "A fiduciary relationship exists when there is a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one reposing the confidence." *Avila*, 801 F.3d at 782.[6] Under Illinois law, however, "a bank generally owes no fiduciary duty to its depositors" because the "relationship consists simply of an arms-length transaction between debtor and creditor." *Miller*, 4 F.3d at 520; *see also Jones v. Countrywide Home Loans, Inc.*, 2010 WL 551418, at *5 (N.D. Ill. 2010) ("A debtor-creditor relationship is not a fiduciary one as a matter of law."). Walker's SAC contains no allegation suggesting that her relationship with BANA is anything other than an arms-length

---

[6] A fiduciary duty may be created expressly in a contract or by way of special circumstances. *See Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 748–49 (7th Cir. 2006).

13

arrangement between a bank and its customer. Instead, Walker's allegations focus on BANA having the responsibility to maintain the privacy of her accounts. (SAC at 6.) But BANA's responsibility to maintain customers' accounts and the privacy thereof is simply a typical responsibility of a bank. Without more, the Court cannot draw a reasonable inference that a fiduciary duty exists.

Accordingly, Count 3 against BANA must be dismissed whether viewed as a claim for breach of contract or one for breach of fiduciary duty.

### IV.    Count 4—Tortious Interference

Count 4 asserts a claim for tortious interference against BANA. In support of this claim, Walker alleges that BANA "attempted to destroy [Walker's] business by concealing the purchases" during the time period in question and "delet[ing], purg[ing], eras[ing], and replac[ing] the information contained in the original record of the bank account of [Walker]." (*Id.*)

In its motion to dismiss, BANA construes Count 4 as a claim for tortious interference with contract. To state a claim for tortious interference with contract, a plaintiff must allege: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 842 (7th Cir. 2015). But Notwithstanding BANA's approach to Count 4, a claim for tortious interference need not involve an existing contract. Walker may be raising a claim for tortious interference with a prospective business relations. To state a claim for tortious interference with a prospective business relations, a plaintiff must allege: (1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3)

14

purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. *Premier Transp., Ltd. v. Nextel Commc'ns, Inc.*, No. 02 C 4536, 2002 WL 31507167, at *1 (N.D. Ill. Nov. 12, 2002) (internal quotation marks omitted). Regardless of whether directed toward a contract or a prospective business relationship, however, a common law tortious interference claim requires an allegation of "interference as a result of conduct directed by the defendant toward a third party." *Id.* at *2. Thus, Walker's claim fails because she does not plead that BANA interfered with any relationship between her and a third party.

In her response to BANA's motion to dismiss, Walker suggests that BANA interfered with her business, Walkerealty. But that is not enough to state a claim. *D&K Properties Crystal Lake v. Mut. Life Ins. Co. of New York*, No. 95 C 4974, 1996 WL 224517, at *8 (N.D. Ill. May 1, 1996) ("[T]o state a claim for tortious interference, the acts that form the basis of tortious interference must be directed at parties other than plaintiff.") (internal quotation marks omitted); *Unique Envelope Corp. v. GSAmerica, Inc.*, No. 00C7811, 2002 WL 598511, at *4 (N.D. Ill. Apr. 18, 2002) ("A plaintiff states a cause of action only if he alleges . . . action by the interfering party directed toward the party with whom the plaintiff expects to do business."). Instead, Walker must allege that BANA interfered with her actual contractual relationship, or prospective business relationship, with someone else. Because Walker does not satisfy the requirement of interference with a third party, Count 4 is dismissed as well.

## V.     Count 5—Intentional Infliction of Emotional Distress

In Count 5, Walker asserts a claim against BANA for IIED. Specifically, Walker alleges that BANA "intentionally lied about the purchases made from the account of [Walker] causing

stress, duress, and intentional emotional distress due to inaccuracies in their record-keeping and retrieval . . . ." (SAC at 7.)

In Illinois, a plaintiff must allege each of the following elements to state a claim for IIED: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress. *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997). To qualify as extreme and outrageous, "conduct must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). In determining whether conduct rises to that level, courts consider three factors: "the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme;" (2) "whether the defendant reasonably believed its objective was legitimate;" and (3) "whether the defendant was aware the plaintiff was peculiarly susceptible to emotional distress, by reason of some physical or mental peculiarity.'" *Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003).

Here, Walker's allegations fail to satisfy the pleading requirement for extreme and outrageous conduct. There are no facts in the complaint suggesting BANA believed or that Walker was in fact particularly susceptible to emotional distress, or that BANA held any power or control over Walker. Walker's allegations simply do not compare to the type of conduct that typically satisfies Illinois's "very high standard" for extreme and outrageous conduct. *Jaskowski v. Rodman & Renshaw, Inc.*, 813 F. Supp. 1359, 1363 (N.D. Ill. 1993); *see, e.g.*, *Honaker v. Smith*, 256 F.3d 477, 492 (7th Cir. 2001) (man intentionally caused a person's house to be set on fire to force him to leave town); *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1251 (Ill. App. Ct. 1990)

(employer pressured employee for dates, offered her money in return for sexual favors, and threatened to kill and rape her); *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. App. Ct. 1988) (financial institution defrauded plaintiff suffering from heart disease out of millions of dollars). Cases involving more egregious conduct than that alleged by Walker have been dismissed by courts as not satisfying the extreme and egregious factor. *See, e.g.*, *Bittman v. Fox*, 107 F. Supp. 3d 896, 904 (N.D. Ill. 2015) (dismissing IIED claim where plaintiff alleged defendant repeatedly defamed her by falsely imputing criminal conduct to her, falsely accusing her of discriminatory conduct, and creating a Facebook page to impersonate plaintiff's business); *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 512 (N.D. Ill. 2012) (dismissing IIED claim where plaintiff alleged his supervisor subjected him to "outbursts of yelling, profanity and insults about [his] religion and ethnicity," and verbally abused and harassed him through the use of derogatory and offensive slurs regarding his religion and ethnicity); *Robinson v. Sabis Educ. Sys., Inc.*, No. 98 C 4251, 1999 WL 414262, at *16 (N.D. Ill. June 4, 1999) (dismissing IIED claim where plaintiff alleged uniformed school guards removed her from the school's grounds in front of her children). As pleaded, Walker's allegations of IIED simply do not rise to the level required to be deemed extreme and outrageous. In addition, although Walker states in conclusory fashion that BANA acted "intentionally," she does not allege any facts tending to show that BANA intended to inflict severe emotion distress or knew there was a high probability that its conduct would inflict severe emotional distress upon her. For these reasons, the Court dismisses Count 5.

### VI. Count 6—Economic Harm

Count 6 against BANA purports to assert a claim for "past, present, and future" economic harm to Walker's "sole proprietorship." (Compl. at 7.) But there is no independent cause of action under Illinois law for "economic harm." In response to BANA's motion to dismiss, Walker does

not point to any legal authority to support her ability to assert "economic harm" as its own cause of action, separate and apart from the causes of action that Walker attempts to alleges elsewhere in her complaint. As Walker has failed to allege a viable cause of action, Count 6 must be dismissed as well.

### VII.    Procedural Issues Raised by Walker

Finally, Walker's response to BANA's motion to dismiss raises various procedural issues that she believes renders the filing fatally defective. The Court briefly discusses each in turn.

First, Walker argues that BANA did not comply with the Court's October 1, 2021 Order that BANA "answer or otherwise respond" to the SAC by October 15, 2021. (Pl.'s Resp. at 2.) But BANA filed its Rule 12(b)(6) motion to dismiss for failure to state a claim on October 15, 2021. The filing of a Rule 12(b)(6) motion extends the deadline for the defendant to file its answer until 14 days after the Court denies the motion. Fed. R. Civ. P. 12(a)(4). If, as here, the Court grants the motion to dismiss with respect to the entire complaint, the defendant has no obligation to file an answer until 14 days after the plaintiff files an amended complaint. Fed. R. Civ. P. 15(a)(3). As BANA's motion to dismiss extended the deadline for its answer, the Court finds no procedural error.

Second, Walker complains that BANA's 14-page memorandum is a page short of what she characterizes as the Court's 15-page requirement. (Pl.'s Resp. at 2.) But the 15-page limit under the Northern District's Local Rule 7.1 is a *maximum* page-limit, not a *minimum* page-limit. The Local Rules do not state that a memorandum must be exactly 15 pages; rather, the Local Rules impose a cap on the number of pages allowed to be filed. At 14 pages, BANA's memorandum of law in support of its motion to dismiss satisfies the page limit, posing no procedural issue. In fact,

it is Walker's 20-page response to BANA's motion that exceeds the 15-page limit in violation of the local rule.

Third, Walker contends that BANA has not complied with the notice requirement for a Rule 12(b)(6) motion. (Pl.'s Resp. at 2.) The Court understands Walker to be referencing the requirement in Local Rule 5.3(b) that all motions be noticed for presentment. N.D. Ill. LR 5.3(b). But at the time BANA filed its motion on October 15, 2021, the Northern District of Illinois had suspended Local Rule 5.3(b) in light of the ongoing public health emergency arising from the COVID-19 pandemic. Accordingly, it was not a violation of the Local Rules for BANA to file its motion without also filing a separate notice of presentment.

Lastly, Walker contends that she received BANA's motion to dismiss along with its memorandum on October 17, 2021, via courtesy mail. (*Id.*) She states that she has not received proper notice from the Court's docketing system. (*Id.*) BANA's courtesy copy to Walker was received timely and BANA has complied with the service and filing requirements. Walker's failure to receive proper notice from the ECF system appears to have been caused by technical error regarding the electronic filing system and Walker's email address, and by no fault of BANA.

In short, none of the purported procedural errors cited by Walker provide any reason for the Court to deny BANA's motion or otherwise fail to afford it full consideration.

**CONCLUSION**

For the foregoing reasons, BANA's motion to dismiss (Dkt. No. 31) is granted and the claims against it in Walker's SAC are dismissed without prejudice. Although BANA requests that the claims be dismissed with prejudice, the Court will give Walker an opportunity to amend her complaint to cure the deficiencies described above with the benefit of the Court's guidance. As Walker has expressed a desire to file an amended complaint anyway to add additional parties, she may use the opportunity to file a third amended complaint for that purpose as well.

ENTERED:

Dated: March 29, 2022

_____
Andrea R. Wood
United States District Judge