**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DORIS V. WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21-cv-03589 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| BANK OF AMERICA, N.A., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Doris Walker had an account with Lienhub, an online web portal through which users purchase tax liens on properties in Florida. To fund her transactions, Walker linked her Lienhub account to her bank accounts with Defendant Bank of America, N.A. ("BANA"). Lienhub then locked Walker's account. According to Walker, starting before and continuing after her account was locked, BANA refused to provide her with accurate bank statements, instead altering her account records in collusion with Lienhub and a number of Florida counties. As a result, Walker has sued BANA and Lienhub, claiming that they violated her constitutional rights and committed various common law torts by manipulating and misrepresenting her transactions. In a previous Memorandum Opinion and Order, this Court granted BANA's motion to dismiss the claims against it in Walker's Second Amended Complaint but also granted Walker leave to file a further amended complaint. In her Fourth Amended Complaint ("4AC"), which is now the operative complaint, Walker again asserts claims against BANA and Lienhub, as well as thirteen Florida counties and six Florida circuit courts. Before the Court is BANA's motion to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, BANA's motion is granted in part and denied in part.

## BACKGROUND

For purposes of the present motion to dismiss, the Court accepts as true all well-pleaded facts in the 4AC and draws all reasonable inferences from those facts in favor of Walker as the non-moving party. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). As Walker is representing herself, the Court will construe the 4AC liberally and hold it to a less stringent standard than a formal pleading drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The 4AC alleges as follows.

Walker and her real estate company, WalkeRealty LLC, have six bank accounts with BANA. (4AC at 38–39, 59, Dkt. No. 89.) Walker alleges that her relationship with BANA is governed by a banking agreement (*id.* at 39), although the agreement was not included with the 4AC. Walker used her BANA accounts to fund her activities on Lienhub. Specifically, Walker linked her Lienhub account to her BANA accounts, and she purchased a number of tax liens through Lienhub using funds from those BANA accounts. (*See id.* at 58–59.) On June 6, 2021, however, Lienhub locked Walker's account and did not reactivate it. (*Id.* at 47–48.) As a result, Walker could not transfer liens to other bidders or partners. (*Id.* at 49.)

Since that time, BANA has refused to provide Walker with accurate banking statements, instead providing her with statements matching the inaccurate purchase histories provided by the Florida counties from which she purchased the liens. (*Id.* at 53, 73.) Additionally, Lienhub sold and transferred ownership of the property held in her now-locked Lienhub portfolio and double-charged her for at least one property without providing a refund. (*Id.* at 54–55.) BANA collaborated with Lienhub in the scheme to double charge Walker by telling her that her accounts did not have sufficient funds. (*Id.* at 56.) Part of the conspiracy involved "erasing, manipulating[,] . . . and transferring electronically stored assets without consent or authorization" through the first half of 2021. (*Id.* at 59.) Walker presumes BANA was aware of those actions

because BANA "withheld the transaction records relating to the purchases and continue[s] in [its] noncompliance to date." (*Id.* at 59.) In addition, Walker asked for account records from BANA for three of her six accounts but found discrepancies between her records and those provided by BANA, indicating that BANA's records are inaccurate. (*Id.* at 59–60.) BANA has refused to investigate the errors in Walker's account. (*Id.* at 63.) Instead, BANA has received ACH payments intended for Walker from Lienhub or the Florida counties that the bank denies have been made. (*Id.* at 63–64.)

In sum, Walker alleges that BANA, Lienhub, and the various Florida counties have engaged in a conspiracy pursuant to which Lienhub has locked her account but continues to trade liens, in collusion with the Florida counties, and sends the proceeds from the sales to BANA, which refuses to put the money in her account. Although the lengthy 4AC includes several variations on the alleged scheme, the basic dispute appears to revolve around discrepancies among three sets of records: (1) Walker's own records of purchases she made; (2) Lienhub's records, some of which Walker alleges show canceled or refunded sales; and (3) BANA's records, which Walker alleges do not match hers and which BANA will not produce in full for her to examine.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Even though their filings are construed liberally, *pro se* litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, in addition to the notice-pleading requirements in Rule 8, any fraud-based claims also must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires the complaint to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In other words, plaintiffs claiming fraud must allege the time, place, and content of any alleged misrepresentations, the means by which the misrepresentations were communicated, and the identities of whoever communicated the misrepresentations. *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Put simply, Rule 9(b) requires pleading "the who, what, when, where, and how" of the fraud. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016).

## I. WalkeRealty LLC as a Plaintiff

As an initial matter, BANA notes that the 4AC identifies both "Doris V Walker" **and** "WalkeRealty LLC" as plaintiffs in this case. BANA contends that any claims filed on behalf of WalkeRealty LLC must be dismissed because it is a "corporation" (not a natural person) and it is not represented by an attorney. The 4AC actually identifies WalkeRealty LLC as an Illinois limited liability company. (4AC at 15.) It is a distinction without a difference, however, as for purposes of self-representation "there is no difference between a corporation and a limited liability company." *United States v. Hagerman*, 545 F.3d 579, 582 (7th Cir. 2008). One always must "hire a lawyer if [they] want to sue or defend on behalf of the entity." *Id.* at 581. Even if Walker is the sole member of WalkeRealty LLC, as she claims to be, any actions on the LLC's

4

behalf must be brought by a licensed attorney. *See Austin v. Cook County*, Case No. 1:21-cv-3826, 2022 WL 4386685, at *3 (N.D. Ill. Sept. 22, 2022). Accordingly, to the extent Walker asserts any claims on behalf of WalkeRealty LLC, those claims are dismissed.

## II. Breach of Contract (Count 8[1])

The Court next considers each of the claims Walker asserts against BANA on her own behalf, starting with her claim for breach of contract. To plead breach of contract adequately, a plaintiff must allege "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*, 61 N.E.3d 1155, 1159 (Ill. App. Ct. 2016). BANA argues that Walker's breach of contract claim must be dismissed because she fails adequately to allege a specific contract or to identify which provisions BANA breached.

In the 4AC, Walker does refer to a "banking agreement that commenced in May of 2020." (4AC at 87.) But she does not reference specific language from the agreement, direct the Court to any particular section of the contract that BANA breached, or include the contract as an exhibit (despite stating that it is attached as Exhibit 4). (*Id.* at 39.) While Walker's failure to include the contract or cite specific provisions "is not necessarily fatal to [her] claim . . . [she] must in all events plead sufficient facts to suggest plausibly that a breach of some contractual obligation occurred." *Melnick v. Betfair Interactive, LLC*, 563 F. Supp. 3d 822, 824 (N.D. Ill. 2021). And she does not do so. Instead, the 4AC alleges merely that "[BANA] has breached the agreement located in the banking agreement that commented [*sic*] in May of 2020." (4AC at 87.)

---

[1] Walker's 4AC uses the moniker "Count 8" twice—first, for the breach of contract claim and, second, for the negligence claim discussed below.

While BANA presumably has access to its own banking agreements, Walker's allegations do not put it on notice of what provision in her agreement she believes it has breached.[2] Indeed, BANA is not even on notice of which accounts' banking agreements were breached, as Walker does not state whether she is relying on the agreements covering all or only some of the accounts.

Without alleging BANA's obligations under the relevant banking agreement and her rights as a depositor, Walker cannot satisfy the notice-pleading standard. BANA's motion to dismiss is therefore granted as to Walker's breach of contract claim in Count 8.

### III. Electronic Funds Transfer Act (Counts 1 and 3)

Counts 1 and 3 assert claims under the Electronic Funds Transfer Act ("EFTA"). In Count 1, Walker claims that BANA has failed to explain missing payments from her bank statements as required under 15 U.S.C. § 1693f(d).[3] In Count 3, Walker claims that BANA intentionally misrepresented her purchases involving Lienhub, refused to supply accurate accounting records, and altered her BANA records to match those of the Florida counties, all in violation of 15 U.S.C. § 1693d(a). That section requires a financial institution to document certain information "[f]or each electronic fund transfer initiated by a consumer from an electronic terminal." *Id.* If a consumer notifies the bank of an error after receiving that documentation, the financial institution must investigate the alleged error, make a determination, and inform the consumer of the results of the investigation. 15 U.S.C. § 1693f(a). It must do so even if it finds that no error occurred. *Id.* § 1693f(d). Considering the allegations of the 4AC as a

---

[2] At one point, Walker alleges that BANA has failed to make a report within ten days of being notified of errors on the account. But this allegation appears to refer to a Consumer Finance Protection Bureau regulation rather than her banking agreement with BANA. *See* 12 C.F.R. § 1005.11(c)(1) ("A financial institution shall investigate promptly and . . . shall determine whether an error occurred within 10 business days of receiving a notice of error.").

[3] Walker also invokes the Sherman Act, 15 U.S.C. § 1, but the Court does not discern any antitrust theory in the 4AC.

whole, it appears that the alleged violation of §1693f is premised on the alleged failure to comply with § 1693d.

Walker alleges that she notified BANA of errors in her account but it neither launched an investigation nor provided her with the results of any investigation. Failure to provide an explanation of findings may, under certain circumstances, constitute a violation of the EFTA. *See Gale v. Hyde Park Bank*, 384 F.3d 451, 453 (7th Cir. 2004). However, Walker also alleges that BANA ***did*** provide her with bank statements upon her request—albeit ones she believes to have been doctored to match the Florida counties' records. Despite alleging that multiple sources provided the same information, Walker fails to identify the discrepancy between that information and her own. Instead, she contends that BANA and Lienhub became "enraged with jealousy" upon seeing her bank statements and colluded "to undermine [her] business prowess." (Walker Second Resp. at 27–28, Dkt. No. 102.)

Construing Walker's claims liberally, she alleges that she informed BANA of an error; BANA responded with bank statements; and the fact that they match the other Defendants' statements raises an inference of doctoring in violation of the EFTA. But Walker has not alleged adequate facts to support such an inference. To the contrary, the facts she alleges indicate that BANA complied with the EFTA—that is, BANA conducted an investigation and provided Walker with the result—but she is dissatisfied with the substance of their response. Such allegations do not state a claim. Therefore, Counts 1 and 3 are dismissed.

### IV.    Civil Rights Claims (Counts 2 and 4)

Count 2 invokes a number of civil rights provisions, including 42 U.S.C. §§ 1981, 1983 and 1985(3). To the extent Walker also seeks to assert claims under 18 U.S.C. §§ 241 and 2510, her claims cannot proceed because those criminal statutes do not provide her a private right of action. In addition, 5 U.S.C. § 552a, which Walker also cites, sets out administrative procedures

for record-keeping by certain federal government organizations and employees. Walker does not allege that BANA is a government organization for purposes of Title 5; moreover, it is not clear how a statute addressing access to government records applies to her bank statements at BANA. Thus, Walker has not asserted a viable claim arising under Title 18 or Title 5.

With respect to her Title 42 claims, Walker has not pleaded sufficient facts to state a claim. To be held liable for constitutional violations pursuant to 42 U.S.C. § 1983, a defendant must have acted "under color of state law." *Cosgriff v. County of Winnebago*, 876 F.3d 912, 915 (7th Cir. 2017). Walker contends that BANA acts under the color of law because it exercises authority given by the government—presumably, this refers to her contention that the bank's charter renders it a state actor for § 1983 purposes. In opposition to BANA's previous motion to dismiss, Walker argued that BANA is a state actor because of its bank charter, the fact that it is insured by the Federal Deposit Insurance Corporation, and the fact that the Office of the Comptroller of the Currency regulates it. The Court rejected those arguments in its Memorandum Opinion and Order dated March 29, 2022. (*See* 3/29/2022 Order at 5–6, Dkt. No. 63 (citing *Ordower v. Off. of Thrift Supervision*, 999 F.2d 1183, 1187 (7th Cir. 1993) ("That [defendant] holds a federal charter no more subjects its acts to the due process clause than the fact that most corporations hold charters from states makes their deeds 'state action.'"); *Bishop v. Fed. Intermediate Credit Bank of Wichita*, 908 F.2d 658, 663 (10th Cir. 1990) (explaining that "[d]espite pervasive government regulation of the farm credit system and the designation of federal intermediate credit banks as 'federally chartered instrumentalities of the United States,' a federal intermediate credit bank is not a government actor for purposes of establishing constitutional deprivations") (alterations and citation omitted)); and *Caldwell v. Citimortgage, Inc.*, No. 15-CV-1784, 2015 WL 6445467, at *4 (N.D. Ill. Oct. 23, 2015) ("[T]he Court

recognizes that [defendant] was chartered by the federal government. However, this is insufficient, in and of itself, to transform [defendant] into a government actor.").)Those arguments fare no better with respect to her 4AC.

There are instances when a non-state actor can be considered a state actor for purposes of § 1983 purposes, each of which requires coordination between the private party and the state. *See Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). But Walker has not adequately alleged any such coordination. The closest she comes are her allegations regarding a February 2021 purchase in Flager County, Florida. (4AC at 65.) But even there, Walker alleges collusion in a conclusory manner; she does not plead any facts to support her claim. (*See id.* at 66 (stating that "the Flager County tax office stated that the purchase could not go through for various reasons and BANA colluded with the county office").) The Court cannot draw a plausible inference that BANA and Flager County's tax office colluded based solely on Walker's say-so. Therefore, to the extent Count 2 asserts claims under § 1983, it is dismissed.

Likewise, claims under § 1985 require the presence of a state actor with whom BANA conspired. *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009) ("The function of § 1985(3) is to permit recovery from a private actor who has conspired with state actors.") (citing *Dennis v. Sparks*, 449 U.S. 24 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)). As with her § 1983 claim, Walker has not adequately alleged any conspiracy between BANA and a state actor. For that reason, Walker has failed to state claim under § 1985(3) as well.

In contrast, § 1981 claims can proceed against non-state actors without allegations of coordination or a conspiracy with a state actor. However, § 1981 does require that a plaintiff "initially plead . . . that, but for race, [she] would not have suffered the loss of a legally protected

right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Setting aside whether she has adequately pleaded the deprivation of a legally protected right, Walker has not plausibly alleged that her race was the but-for cause of any such deprivation. Instead, she alleges that BANA's actions were "clearly motivated by greed, jealousy, and race." (4AC at 66.) Under § 1981, however, race cannot be a motivating factor; it must be the but-for cause of the alleged deprivation. *Comcast Corp.*, 140 S. Ct. at 1017–18. According to Walker's own allegations, "race" was only one of at least three motivating factors. And she provides no factual allegations to support her conclusory statement that BANA's actions were motivated by her race; indeed, it is unclear from the 4AC how BANA would have known her race. To the extent Count 2 asserts claims under § 1981, it is dismissed.

Finally, Count 4, which asserts a claim under the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*, is also dismissed. In Walker's response brief, she identifies this as a claim for racial discrimination due to "racial hostility and superiority" displayed by BANA employees, who she accuses of being "individuals with low iqs [*sic*] and that have been labeled mentally retarded." (Walker Second Resp. at 34.) Her 4AC alleges that "[t]here is no other explanation for the sequence of actions that has taken place" other than racial animus. (4AC at 69–70.) But she does not plead any facts that support a plausible inference of racial animus; instead, merely stating in conclusory fashion that BANA exhibited racial animus. Counts 4 is therefore dismissed as well.

## V.  Regulatory and Statutory Claims (Counts 5 and 7)

Count 5 asserts a claim under 31 C.F.R. § 1020.410, which imposes recordkeeping duties on banks. Enforcement of this regulation is delegated to the Director of the Financial Crimes Enforcement Network ("FinCEN"), 31 C.F.R. § 1010.810(a), (c), who is responsible for coordinating and directing the procedures and activities of various other federal agencies tasked

with determining compliance in specific contexts. *Id.* § 1010.810(b). Notably, neither § 1020.410 nor the relevant statute's enforcement provision provide a private right of action. In any case, Walker claims in her response brief that Count 5 is not actually a claim, but rather a fact that she is presenting to the Court. (Walker Second Resp. at 34–35.) The Court accepts Walker's representation that she does not actually intend to pursue Count 5 as a separate claim, particularly in light of the lack of a private right of action. Therefore, Count 5 is dismissed.

Count 7 appears to assert a claim for miscalculation of interest under Florida law. Walker claims that she linked her BANA account to Lienhub and, apparently, interest payments from her purchases were not deposited into her BANA account. The statute Walker cites concerns interest rates on delinquent property taxes. *See* Fla. Stat. § 197.172. She does not allege that BANA was responsible for calculating that interest or that it had any role in the calculation. Rather, Walker linked her BANA account to Lienhub so as to make payments on the Lienhub platform directly from her BANA account, which allowed redemption payments, interest, and refunds to be deposited into her BANA account. The Florida statute does not appear to contain a private right of action, nor does Walker argue that it does. Instead, as with Count 5, Walker concedes that this is not a separate claim but rather provides facts for the Court to consider. (Walker Second Resp. at 34–35.) Therefore, Count 7 is dismissed.

## VI.     Fraud (Counts 6 and 10)

In the 4AC, Walker asserts two claims for fraud against BANA. Count 6 is styled as a claim for "Fraud/Concealment" and invokes 18 U.S.C. § 1341. Count 10 is styled as a claim for "Civil Fraud." However captioned, claims sounding in fraud are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. As noted above, under that standard, "a party must state with particularity the circumstances constituting fraud or mistake." *Id.* This requires pleading "the who, what, when, where, and how" of the fraud. *Wigod v. Wells Fargo Bank, N.A.*,

673 F.3d 547, 569 (7th Cir. 2012). But "conditions of a person's mind," such as BANA's knowledge, "may be alleged generally." Fed. R. Civ. P. 9(b).

### A.  Civil Fraud

Under the "Civil Fraud" heading, Walker alleges that BANA engaged in fraud by deleting her purchases, withholding documents relating to her purchases, and denying the existence of her account. She also alleges that BANA has failed to pay interest related to her account in a timely fashion.

The Court construes Walker's allegations about the inaccuracies in her account documentation as asserting a claim for fraudulent misrepresentation. To state a claim for fraudulent misrepresentation under Illinois law, a plaintiff must allege: "'(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance.'" *Wigod*, 673 F.3d at 569 (quoting *Dloogatch v. Brincat*, 920 N.E.2d 1161, 1166 (Ill. App. Ct. 2009)).

BANA argues that Walker's fraud claims are predicated on her allegations that her bank records are inaccurate, but she has not identified with particularity which accounts are affected and she does not claim to have been deceived or to have changed her position in reliance on BANA's deception. Indeed, Walker alleges that BANA's records match those of the Florida counties. (4AC at 73.) Walker responds that the fraud lies in BANA's conspiracy with Lienhub and the Florida counties to alter her bank statements so that they reflect the Florida counties' fraudulent purchase records.

Walker's response does not save her fraud claim. Her 4AC includes the last four digits of three account numbers but does not state whether those are the accounts involved in the fraud. Further, Walker's theory of fraud—that BANA deleted purchases—is belied by her own

allegations that BANA's records match the Florida counties' records. (4AC at 73.) More importantly, Walker has not pleaded fraud with sufficient particularly so as to put BANA on notice of which accounts are affected, how much money is at issue, or which properties are involved. She also has not alleged any reliance on the purported fraud. To the contrary, by her own account, Walker was aware of the alleged discrepancies from the start. Relatedly, Walker has not alleged damage stemming from her reliance on any fraudulent statements. For all these reasons, Count 10 fails to state a claim for fraud and is dismissed.

### B.    Fraudulent Concealment

For Count 6, Walker appears to invoke 18 U.S.C. § 1341. But that is a criminal statute without a private right of action. *Stoller v. Fumo*, No. 19 C 02546, 2020 WL 2404879, at *6 (N.D. Ill. May 12, 2020); *Bajorat v. Columbia-Breckenridge Dev. Corp.*, 944 F. Supp. 1371, 1377–78 (N.D. Ill. 1996) (collecting cases). To be sure, the Seventh Circuit has not expressly weighed in on whether a private right of action exists under 18 U.S.C. § 1341. But several other Courts of Appeals have found that Congress did not intend to create a private right of action when it passed § 1341.[4] This Court agrees. Thus, to the extent Walker relies on the criminal statute to hold BANA liable for fraud, she cannot do so in this civil suit.

Construed liberally, Count 6 may also assert a claim for common-law fraudulent concealment. "To plead this tort properly, in addition to meeting the elements of fraudulent misrepresentation, a plaintiff must allege that the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff." *Id.* A duty to disclose arises

---

[4] *See, e.g.*, *Wisdom v. First Midwest Bank*, 167 F.3d 402, 408 (8th Cir. 1999); *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1178 (6th Cir. 1979); *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th Cir. 1977).

where there is a fiduciary relationship, or where the defendant is in a "position of influence and superiority over [the] plaintiff" due to trust and confidence that the plaintiff has placed in the defendant. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). Here, Walker alleges that BANA has "withh[eld] payments made from Lienhub" (4AC at 72) and refused to "respond with an accurate accounting of the purchases made to [County Defendants]," as well as withholding her bank statements. (*Id.* at 53.)

As explained above, however, Walker has not adequately pleaded the elements of fraudulent misrepresentation. She also has not adequately pleaded that BANA owes her a fiduciary duty because under Illinois law, "a bank generally owes no fiduciary duty to its depositors." *Miller v. Am. Nat'l Bank & Tr. Co. of Chi.*, 4 F.3d 518, 520 (7th Cir. 1993). Walker has offered no allegations from which the Court could conclude that BANA nonetheless owes her a fiduciary duty. Nor has she alleged facts indicating that BANA is in a "position of influence and superiority" over her such that it had a duty to disclose. *Connick*, 675 N.E.2d at 593; *see also Wigod*, 673 F.3d at 572–73 (analyzing the special relationship of a borrower to her lender and finding that none existed).

For these reasons, Count 6, whether construed as alleging criminal fraud or civil fraudulent concealment, is dismissed as well.

## VII. Negligence (Count 8)

Walker's negligence claim invokes both traditional and negligence *per se* theories. The most notable difference between the two theories under Illinois law is that a plaintiff claiming negligence *per se* "must show that the defendant violated a statute and that the violation proximately caused an injury 'of the type the statute or ordinance was intended to protect against.'" *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017) (quoting *Noyola v. Bd. of Educ. of the City of Chi.*, 688 N.E.2d 81, 85 (Ill. 1997)). But the only

statute Walker cites in her negligence claim is Illinois's statute for strict liability regarding criminal offenses, 720 ILCS 5/4-9, and she does not explain how that statute applies to this civil case. While she does reference a number of other statutes throughout her complaint, Walker does not identify which of those statues (if any) underlie her negligence *per se* claim, nor does she connect any statutory violations to her alleged injury. Walker's negligence *per se* claim is therefore inadequately pleaded and dismissed.

Walker also alleges traditional negligence. "The elements of a negligence cause of action are a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Jones v. Chi. HMO Ltd. of Ill.*, 730 N.E.2d 1119, 1129 (Ill. 2000). BANA argues that because it did not owe Walker a ***fiduciary*** duty, her negligence claim fails at the first element. But this is too limited a view of the bank's duty. "[T]he law has long imposed on banks a duty of reasonable care." *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 618 (7th Cir. 2001). While not expressly saying so, BANA's argument appears to rely on the *Moorman* doctrine, which bars purely economic recovery in tort and requires such claims to sound in contract law. *Dixon, Laukitis, and Downing, P.C. v. Busey Bank*, 993 N.E.2d 580, 588 (Ill. App. Ct. 2013) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982)). But there are exceptions to the *Moorman* doctrine that allow tort claims alleging purely economic loss to proceed, and one of those exceptions arises when there is a fiduciary duty that "existed independent of the contract." *Wigod*, 673 F.3d at 567. If BANA had a fiduciary duty (which it does not), Walker's claim could fall under a *Moorman* exception and potentially expose BANA to tort liability.

However, the mere fact that a plaintiff alleges economic loss does not mean *Moorman* applies. The Seventh Circuit has indicated that *Moorman* might not apply in cases involving

banks and their depositors because "the law has long imposed on banks a duty of reasonable care, and that duty is so entrenched that the UCC does not permit the parties to a banking contract to abandon it." *Mut. Serv.*, 265 F.3d at 618. Several courts have expressed an unwillingness to dispose of cases at the pleadings stage when there may be an extra-contractual duty present in a plaintiff's relationship with a bank. *See, e.g.*, *Li v. J.P. Morgan Chase Bank, N.A.*, No. 20-cv-2496, 2021 WL 601673, at *4–5 (N.D. Ill. Feb. 16, 2021); *Danqing Huo v. Synchrony Bank*, Case No. 19-cv-03881, 2020 WL 2128729, at *4 (N.D. Ill. May 5, 2020); *Geimer v. Bank of Am., N.A.*, 784 F. Supp. 2d 926, 934 (N.D. Ill. 2011) (declining to dismiss a negligence claim against a bank at the pleadings stage because of the possibility that "an extra-contractual duty between banks and their depositors might permit such a claim"). This Court adopts that approach here. As Walker alleges, BANA had a duty to maintain accurate records and to provide her with that information. Construed liberally, Walker alleges that BANA had an extra-contractual duty to perform these actions. True, to the extent this duty arises from contract, she cannot recover in tort. *See Huo*, 2020 WL 2128729, at *4 ("To the extent that Defendant's obligations to [the plaintiff] are defined entirely by contract, the economic loss doctrine bars her attempt to recover under a negligence theory."); *Mut. Serv.*, 265 F.3d at 615. But the actual contract between Walker and BANA was not attached to the pleadings and is not yet part of the record for the Court's consideration. The Court declines to dismiss Walker's negligence claim at this early stage based on the *Moorman* doctrine, given the nature of the relationship between a bank and its depositors.

Along with the existence of a duty, Walker must also allege a breach of that duty and resulting damages. The breach that she alleges is BANA's failure to provide accurate ledgers from three of her six accounts. (4AC at 59.) Walker further alleges that she has identified

discrepancies between her own records and those she received from BANA, including at least one instance in which Lienhub purportedly sent money to BANA that should have been deposited in Walker's account but was not. (*See id.* at 59, 63–64.) Accepting her allegations as true, as the Court must at this stage, Walker adequately alleges a breach of BANA's duty to maintain and provide her with accurate banking records. Moreover, Walker has adequately alleged damages in the form of lost funds that should have been deposited into her account but were not. Thus, while Walker cannot proceed on a negligence *per se* theory, her claim for traditional negligence survives.

### VIII. Tortious Interference with Business Relations (Count 9)

Walker's 4AC includes a claim for tortious interference with business relations similar to the previously dismissed tortious interference claim from her Second Amended Complaint ("2AC," Dkt. No. 23). In support of her tortious inference with business relations claim, Walker alleges as follows:

> [BANA] has attempted to destroy Plaintiff's business by concealing the purchases and accounting on the portfolio of the Plaintiff made between January 1, 2021, and June 7th, 2021. [BANA] has deleted, purged, erased, and replaced the information contained in the original record of the bank account of Plaintiff. [BANA] has erased hundreds of records and has concealed the actual accounting within the confines of the Plaintiffs accounts related to this suit. . . . [BANA] has breached its financial duty to accurately disclose the transactions completed within the accounts of the Plaintiffs, At all times Bank of America N.A. was responsible for the maintenance, accuracy, and true accounting on the account of the Plaintiffs.

(4AC at 89–90 (internal citations omitted).)

To state a claim for tortious interference with business relations under Illinois law, a plaintiff must allege that "(1) [s]he had a reasonable expectancy of a valid business relationship; (2) defendant knew about the expectancy; (3) defendant intentionally interfered with the expectancy and prevented it from ripening into a valid business relationship; and (4) the intentional interference injured the plaintiff." *Associated Underwriters of Am. Agency, Inc. v.*

*McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005). In addition, she must plead "action by the defendant directed towards that third party." *Id.*

The Court dismissed Walker's claim in the SAC because she failed to plead the "directed towards" requirement. The same is true with respect to her claim in the 4AC. For the operative version of her claim, Walker largely recites the same allegations that have already been found insufficient. The additional allegations in the 4AC address BANA's duty with respect to her account—which she alleges to be a fiduciary duty—but do not speak to whether BANA directed any purported interference towards a third party with which she had a prospective business relationship. Instead, BANA's alleged interference consists solely of conduct directed at her: BANA's alleged refusal to turn over account information, declined accountings, and the like.

BANA also construes this claim as potentially asserting tortious interference with contract. To state such a claim, Walker must allege:

> (1) the existence of a valid and enforceable contract between the plaintiff and a third party, (2) that defendant was aware of the contract, (3) that defendant intentionally and unjustifiably induced a breach of the contract, (4) that the wrongful conduct of defendant caused a subsequent breach of the contract by the third party, and (5) that plaintiff was damaged as a result.

*Bank Fin., FSB v. Brandwein*, 36 N.E.3d 421, 430 (Ill. App. Ct. 2015). To the extent Walker intends to assert a claim for tortious interference with contract, she fails to allege any action by BANA that intentionally and unjustifiably induced a breach of a contract with a third party. Under either theory, Count 9 is dismissed.

### IX.  Intentional Infliction of Emotional Distress (Count 11)

Like her tortious interference claim, Walker's claim for intentional infliction of emotional distress ("IIED") in the 4AC largely repeats the allegations from the IIED claim in the SAC, which the Court dismissed. Specifically, Walkers alleges as follows:

> [BANA], has intentionally lied about the purchases made from the account of the Plaintiff in relation to Lienhub, causing stress, duress, and intentional emotional distress due to inaccuracies in their record-keeping and retrieval of the Plaintiffs account. BANA, has intentionally and recklessly given misinformation regarding the accounting of the Plaintiffs account. This behavior has been evidenced on the entire account of the Plaintiff held with BANA Between January 1 and June 7, 2021.

(4AC at 93.)

To establish IIED, a plaintiff must show three things: (1) "the conduct involved must be truly extreme and outrageous;" (2) "the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress;" and (3) "the conduct must in fact cause severe emotional distress." *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). To be extreme and outrageous, the "conduct must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). Relevant considerations include: (1) that the more power the defendant has over the plaintiff, the more likely the conduct will be extreme; (2) whether the defendant believed its conduct was legitimate; and (3) whether the defendant was aware of any peculiar susceptibility to emotional distress on the plaintiff's part. *Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003) (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). Notably, the "power" factor generally requires a level of direct control, such as an employer-employee relationship. *See, e.g.*, *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 606 (7th Cir. 2006). Though, the power to "adversely affect the plaintiff's interests" can suffice. *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 212 (Ill. 1992); *see also Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) ("[A] jury could easily find that [the police officer] held [plaintiff's] family life in the balance and he exploited his position of power to intentionally cause her distress.").

As with the comparable claim in her SAC, Walker fails to plead extreme and outrageous conduct. True, Walker does allege in conclusory fashion that BANA did not believe its conduct was legitimate. But she does not claim that BANA had any significant degree of control over her. Nor does she allege that she was particularly susceptible to emotional distress, let alone that BANA was aware of any particular susceptibility. Simply put, as explained in the Court's previous opinion dismissing her IIED claim in the SAC, Walkers allegations do not satisfy Illinois's "very high standard" to show extreme and outrageous conduct. *Jaskowski v. Rodman & Renshaw, Inc.*, 813 F. Supp. 1359, 1363 (N.D. Ill. 1993). Cases involving more egregious conduct than that alleged by Walker have been dismissed by courts as not satisfying the extreme and egregious factor. For example, courts have dismissed IIED claims involving allegations that an employer subjected an employee to prolonged abuse and harassment involving racial and religious slurs, *Shamim v. Siemens Industries, Inc.*, 854 F. Supp. 2d 496, 512 (N.D. Ill. 2012), as well as claims that an employer retaliated against an employee by means of a "personalized and vindictive campaign against her" in part because she refused his advances, *Kibbons v. Taft Sch. Dist. 90*, 563 F. Supp. 3d 798, 814 (N.D. Ill. 2021). Accordingly, the Court finds that Walker has failed to allege the type of extreme and outrageous conduct that is actionable and dismisses Count 11.

**CONCLUSION**

BANA's motion to dismiss the 4AC (Dkt. No. 98) is granted in part and denied in part. Specifically, the motion is granted as to all counts with the exception of Walker's claim for negligence in Count 8.

ENTERED:

Dated:  March 7, 2024

_____
Andrea R. Wood
United States District Judge